UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOUIS RIVERA,<br><br>                Plaintiff,<br><br>– against –<br><br>ANJOST CORPORATION and JOSEPH ZARO,<br><br>                Defendants. | Case No.: 13-cv-00379 (MGC)<br><br>**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL <u>RULE 56.1(A)</u>** |

Pursuant to Local Civil Rule 56.1(a) of this Court, defendants Anjost Corporation and Joseph Zaro (together, "Defendants") hereby submit the following statement of material facts as to which there is no genuine issue to be tried:

    **A.**    **Plaintiff Was an Exempt Commissary Manager for Defendants.**

    1.    Plaintiff Louis Rivera ("Plaintiff") was employed by Defendants from 2007 until 2012 as manager of Defendants' commissary, a customarily recognized department of the company. *See* Deposition of Louis Rivera, dated October 8, 2013 ("Rivera Dep.") 12:9-14; 68:7-70:13; 84:9; Declaration of Adam G. Possidente, dated May 15, 2015 ("Possidente Decl.") Ex. B (Defendant's 2007 Personnel Profile Sheet, reflecting that Plaintiff's title was "Commissary Manager").

    2.    As commissary manager, Plaintiff's primary responsibility was to supervise and manage the between 14 and 15 other employees preparing food for distribution to Defendants' retail locations. *See* Rivera Dep. 71:19-72:9; 72:15-21.

    3.    To that end, Mr. Rivera instructed those employees on which foods to prepare, how to do so, what other preparations to undertake, and dealt with any other issues that arose during the course of the day. *See id.* 71:19-78:21.

4. Plaintiff also hired employees, and participated in decisions to terminate employees. *See id.* 79:19 ("The hiring and firing, I used to hire . . . ."); 81:10-20 (discussing how Defendants acted on Plaintiff's recommendations to terminate employees).

5. During his tenure working for Defendants, Plaintiff was a salaried employee. *See, e.g., id.* 90:9-25; 92:7-14; 92:22-93:15; 93:16-94:14; 94:16-95:15; 95:17-25; 96:3-14; 96:16-97:6; 97:8-19; 101:16-23; 101:25-102:11; 102:12-21; 102:22-103:13; 103:15-104:2; 104:4-18; 104:20-105:7; 105:8-18; Possidente Decl. Exs C, E, F, G (sample pay stubs, establishing that Plaintiff received a salary while employed by Defendants).

6. When he was hired, Plaintiff received a salary of $850 per week. Possidente Decl. Exs. B (Defendants' 2007 Personnel Profile sheet for Plaintiff, reflecting $850 per week salary) & C (sample paystubs reflecting same salary).

7. Plaintiff subsequently received a series of raises, such that his salary in 2012 was $1,377 a week. *Id.* at Exs. D (Defendants' 2011 Personnel Profile sheet for Plaintiff, reflecting a $1,377 per week salary) & G (sample paystubs reflecting same salary).

8. Plaintiff's salary was never subject to deduction for quality or quantity of time worked. Instead, the only deductions were those statutorily required, such as Social Security or income taxes. *See, e.g.,* Rivera Dep. 92:11-14 (admitting that Defendants' earning statement reflects no deductions other than statutory deductions for Medicare, income taxes, and Social Security); 93:11-14 (same); 94:11-14 (same); 95:-12-14 (answering "Yes, I guess so" to the question of "[a]nd there are no deductions here for your not having worked a full week or your being paid less than five days, correct?"); 97:14-19; 102:17-21; 103:9-13; 118:21-25; 122:13-16; *see also* Possidente Decl. Ex. C, E, F, G (sample earnings statements reflecting that Plaintiffs' salary was never subject to deductions for quality or quantity of time worked).

9. Plaintiff also received paid sick days, paid vacation, and paid personal time. *See, e.g.*, Rivera Dep. 114:2-115:21; 136:4-18 (answering "Yes") to question of "do I take this [paystub] to mean that you also, in addition to your salary, took a sick day and you were paid for a sick day?").

10. In those instances, Plaintiff still received his full weekly salary, without any deductions. *See* Possidente Decl. Exs. C, E, F, G (sample earnings statements).

B.     **Plaintiff Was Not Paid a Day Rate**

11. In addition to his normal workweek, Defendants at times also asked Plaintiff to work an extra day (typically a Saturday or Sunday). In those instances, in addition to his weekly salary, Plaintiff also received additional compensation in the form of $1/5^{th}$ of his weekly salary, in addition to his guaranteed salary. *See, e.g.*, Rivera Dep. at 111:7-112:18; 116:15-117:10; 117:12-118:10; 118:12-25; 122:2-16; 122:18-123:10; 123:23-124:10; 124:11-22; 124:23-125:10; 125:11-126:6; 126:8-126:18; 126:20-127:12; 127:14-127:23; 127:24-128:14; 128:16-129:14; 129:15-130:3; 130:5-21; 136:19-137:17; 137:18-138:8; 138:9-21; 138:22-139:18; 139:19-140:11; 140:13-141:7; 141:8-141:22; 143:15-144:2; 144:3-13; 144:14-22; 144:23-145:11; 145:13-24; 145:25-146:13; 146:14-25; 147:2-148:6; 148:7-20; 148:21-149:15; 149:16-150:2; 150:4-14; 150:15-151:7; 151:8-17; *see also* Possidente Decl. Exs. C, E, F, G.

12. In all cases, Plaintiff received his weekly salary each week, without fail. *See, e.g.*, Rivera Dep. 96:24-97:3; 97:14-19; 102:3-11; 105:24-106:2; 108:11-14; 116:21-117:3; 117:12-17.

13. Thus, rather than being paid on a "day rate," as Plaintiff claims, Plaintiff was actually a salaried employee who also received additional compensation for additional work.

Dated: New York, New York
May 15, 2015

**VENABLE LLP**

/s/
Michael J. Volpe
Adam G. Possidente
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Telephone: (212) 307-5500
Fax: (212) 307-5598

*Attorneys for Defendants Anjost Corporation and Joseph Zaro*